# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MARTORANA,<br><br>                            Petitioner,<br>   vs.<br>K. MENDOZA-POWERS, Warden,<br><br>                          Respondent. | CASE NO. 1:07cv1203-IEG<br><br>Order Granting Petition for Writ of Habeas Corpus |

Petitioner, a state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging Governor Arnold Schwarzenegger's August 25, 2006 decision reversing the Board of Parole Hearing's 2006 grant of parole[1] to Petitioner. Respondent filed an Answer, and Petitioner filed a Traverse.

The Court delayed resolution of the petition pending the Ninth Circuit's *en banc* rehearing and decision in Hayward v. Marshall, 512 F.3d 536, *reh'g en banc granted,* 527 F.3d 979 (9th Cir. 2008), *opinion vacated* 603 F.3d 546 (9th Cir. 2010). Now that the Ninth Circuit has issued its *en banc* decision in Hayward, the Court finds it appropriate to proceed to consider the merits of this pending case without further briefing. Upon review of the parties' arguments and the record, the Court finds the state court unreasonably determined there was some evidence supporting Governor Schwarzenegger's decision to reverse the Board's grant of parole. Therefore, the Court GRANTS the petition.

---

[1] Although not directly at issue in this Petition, the Court notes the Board also granted Petitioner parole in 2005, and the Governor also reversed that decision.

## ***Background***

Petitioner was found guilty of second-degree murder following a jury trial on October 23, 1981. [Answer, Exhibit 1.] The following statement of facts regarding the commitment offense is taken from the Governor's August 25, 2006 statement of reasons for reversal of the Board's decision.

> During the early morning hours of April 23, 1981, Joseph Martorana and Joseph LoGrasso were riding in Mr. LoGrasso's pick-up truck when Mr. Martorana retrieved a gun from the glove box and shot Mr. LoGrasso in the head and back, killing him. Mr. Martorana then moved Mr. LoGrasso's body from the driver's seat to the passenger's seat and drove the truck home.
>
> Once at his house, Mr. Martorana told his wife and sister-in-law about the killing and got rid of Mr. LoGrasso's truck by moving it down the street. An off-duty police officer discovered the abandoned truck that morning and found Mr. LoGrasso's body inside. Mr. Martorana was arrested the same day.
>
> * * *
>
> When he murdered Mr. LoGrasso, Mr. Martorana was under the influence of drugs and alcohol, and was on probation for an earlier drunk-driving offense. He had been living on disability payments for a job-related injury and had been abusing alcohol and prescription medications. As he told the probation officer, he had been addicted to barbituates and Valium since he was a teenager, and had a history of arrests for public drunkenness and assault and battery on a peace officer. He also admitted to spending time as a juvenile in a Massachusetts reformatory for carrying a shotgun.

[Answer, Exhibit 2, p. 2.] The trial court sentenced Petitioner to a term of 17 years to life. Petitioner does not challenge his conviction or sentence.

On March 28, 2006, following his tenth subsequent parole consideration, the Board of Parole Hearings found Petitioner suitable for parole. [Answer, Exhibit 3, p. 57.] The Board found Petitioner would not pose an unreasonable danger to society or a threat to public safety. The Board noted Petitioner had participated in extensive and consistent self-help programming, had a lengthy and excellent work record, had gained maturity which reduced the risk of recidivism, had realistic parole plans including a job offer and family support, and had maintained positive institutional behavior. [Id., pp. 58-59.] The Board further noted Petitioner had shown signs of remorse, understood the nature and magnitude of the offence, and accepted responsibility. [Id., p. 59.] The Board noted the past two psychological reports from 1999 and 2003 concluded Petitioner presented a low risk of danger to the community. [Id., p. 60.] As a result, the Board granted

Petitioner parole.

The Governor reversed the Board's decision. The Governor noted various positive factors favored parole for Petitioner including his education and vocational training, his work history, his participation in self-help programs and therapy, his favorable evaluation by mental-health professionals, and his parole plans. [Answer, Exhibit 1, pp. 1-2.] However, the Governor found that the gravity of the commitment offense outweighed the positive factors, and was itself sufficient to conclude that Petitioner would pose an unreasonable risk of danger to society. [Id., p. 3.]

Petitioner filed a petition for a writ of habeas corpus with the Tulare County Superior Court challenging the Governor's reversal. The Superior Court denied the petition by written decision filed on September 22, 2006. [Answer, Exhibit 4.] The Superior Court found the Governor's decision was supported by "some evidence" in the record, including that Petitioner had failed to take full responsibility for the commitment offense, the nature and gravity of the offense, Petitioner's history of substance abuse prior to the killing, Petitioner's history of disciplinary violations while in prison, and opposition by the prosecutor. [Id., p. 2.]

Petitioner filed another petition for a writ of habeas corpus in the California Court of Appeal, Fifth Appellate District, challenging the Governor's reversal. [Answer, Exhibit 5.] The California Court of Appeal denied the petition without comment on January 12, 2007. [Answer, Exhibit 6.] Petitioner filed a petition for a writ of habeas corpus with the California Supreme Court, which denied the petition without comment on July 18, 2007. [Answer, Exhibits 7 and 8.] This petition was timely filed thereafter on August 17, 2007. Petitioner argues the Governor's reversal of the Board's decision granting him parole violated his right to due process.

### *Legal Standard*

Pursuant to 28 U.S.C. § 2254, a federal court may grant a writ of habeas corpus only where the state court's adjudication of the matter was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or where the state court's determination was "based on an unreasonable determination of the facts in light of the evidence presented . . . ." 28 U.S.C. § 2254(d)(1) and (2).

1  A state court's decision may be found to be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). A state court decision involves an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or, "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 539 U.S. at 407; Andrade, 538 U.S. 63, 75-76.

A state court's decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" where "the finding is unsupported by sufficient evidence, ... the process employed by the state court is defective, ... or no finding was made by the state court at all." Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004) (citations omitted). Although federal courts must review the state court's findings deferentially, "[d]eference does not by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The question is not whether the state court's determination of the facts was wrong or whether the reviewing court would decide the facts differently; instead, the relevant question is whether the decision is supported by the record. Taylor, 366 F.3d at 1000.

### *Discussion*

1. *Applicable Law Regarding Review of State Parole Decisions*

Petitioner argues the Governor's decision reversing the Board's grant of parole violated his right to due process. In determining whether a prisoner's due process rights have been violated, the Court must first determine whether there is a protected liberty interest with which the State has interfered. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). The Court must then determine whether the State's procedures accompanying the interference were constitutionally sufficient. Id. The protected liberty interest may arise either from the Due

1 Process Clause itself or from the laws of the States.  Id.

2     Prior to the *en banc* decision in Hayward, the Ninth Circuit had determined that under California's statutory scheme, state prisoners had a protected liberty interest in parole and that due process required the Board or Governor's decision to be supported by "some evidence."  Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006); Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007). The Ninth Circuit in Hayward, however, overruled Biggs, Sass, and Irons insofar as those cases were based upon the proposition that there is an independent federal constitutional right to release on parole, or to release in the absence of some evidence of dangerousness.  Hayward, 603 F.3d at 555, 563 ("We overrule any decisions suggesting that the federal constitution imposes a requirement of 'some evidence' of future dangerousness without regard to state law.")

    Instead, the Ninth Circuit determined that any due process right to release on parole must be found in the substantive law of the State.  Hayward, 603 F.3d at 561 ("in the absence of state law establishing otherwise, there is no federal constitutional requirement that parole be granted in the absence of 'some evidence' of future dangerousness or anything else.")  The Court reviewed California's parole laws and regulations, as well as relevant decisions of the California courts regarding an inmate's suitability for parole, to determine whether state law established in California prisoners a right to release on parole.

    Pursuant to California Penal Code § 3041(a), "[o]ne year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall ... meet with the inmate and shall normally set a parole release date as provided in Section 3041.5."  "The panel or the board ... shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."  Cal. Penal Code § 3041(b).  "[A] life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  Cal. Code Regs., tit. 15 § 2402(a).

One of the circumstances tending to show unsuitability for parole is that "the prisoner committed the offense in an especially heinous, atrocious or cruel manner." Cal. Code Regs., tit. 15 § 2402(c)(1). The commitment offense can form the basis of a finding of unsuitability where there were multiple victims, where the offense "was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering", or where "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id. § 2402(c)(1)(A), (D) and (E). In determining whether the commitment offense is a factor demonstrating a prisoner's unsuitability for parole, the panel must determine whether such offense constitutes a circumstance tending to show that a prisoner is presently too dangerous to be found suitable for parole. In re Lawrence, 44 Cal. 4th 1181, 1212 (2008); In re Shaputis, 44 Cal. 4th 1241, 1255 (2008); In re Dannenberg, 34 Cal. 4th 1061, 1071 (2005)). For purposes of judicial review,

> [T]he relevant inquiry is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

Lawrence, 44 Cal. 4th at 1212; see also In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)) ("[t]he test is not whether some evidence supports the *reasons* the Governor cites for denying parole, but whether some evidence indicates a parolee's release *unreasonably endangers public safety*.")

The Board or Governor cannot rely solely upon the aggravated nature of the commitment offense as a basis to deny parole absent evidence of current dangerousness.

> Although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense of a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Lawrence, 44 Cal. 4th at 1214.

Based upon its review of the California statutes and regulations regarding parole, as well as relevant case law, the Ninth Circuit in Hayward found that under California law, "'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole." 603 F.3d at 562. Thus, in resolving a federal habeas corpus claim that a prisoner's denial of parole was not based on "some evidence," courts "need only decide whether the California judicial decision rejecting

parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence'." Id. at 562-63.

2.  *Application to the Facts of this Petition*

After carefully reviewing the record, the Court finds the Tulare County Superior Court's decision upholding the Governor's reversal of the Board's grant of parole to Petitioner was based on an unreasonable determination of the facts in light of the evidence. In reversing the Board's grant of parole, the Governor first discussed Petitioner's history of substance abuse prior to the killing[2] and Petitioner's prison disciplinary record.[3] However, the Governor did not rely upon either of these factors in determining Petitioner was not suitable for parole. [Answer, Exhibit 2, pp. 2-3.]

The Governor next discussed the positive factors militating in favor of parole:

> [H]e has made efforts to enhance his ability to function within the law upon release. He has earned his GED and a Bachelor of Humane Letters, and has taken Emergency Management Institute courses. He has completed vocational training in meat cutting, and has held several skilled institutional jobs in Prison Industry Authority laundry, metal fabrication, yard clean-up, painting and maintenance. In addition, he has held positions as an x-ray technician, sewing machine operator, and clerk. He has also participated in an array of self-help and therapy, including Category X, Parenting Program, Conflict/Anger:Lifelong Management Program, Value Clarification and Responsibility Development Group Therapy Program, Men's Self Help Group, and "The Wandering Zone:Starting Over." Likewise, Mr. Martorana has made efforts to address his substance abuse by participating in the Substance Abuse Program and DEUCE program. At his 2006 hearing, he explained his lengthy absence from Alcoholics Anonymous and Narcotcs Anonymous, and has been consistently involved in those programs since 2004. He received favorable evaluations from various correctional and mental-health professionals over the years, and made parole plans that include living with his wife

---

[2] Petitioner had a history of substance abuse prior to the killing. However, all evidence in the record indicates that Petitioner consistently participated in numerous self-help substance abuse programs including AA and NA throughout his incarceration and up to the time of his parole hearing. There is nothing in the record to indicate Petitioner has used alcohol or drugs, let alone abused those substances, since his incarceration 29 years ago. There is no nexus apparent in the record between Petitioner's history of substance of abuse nearly 30 years ago and his current suitability for parole  [Answer, Exhibit 3, p. 57.]

[3] During his entire 27 years of incarceration prior to the Governor's decision, Petitioner received only one CDC 115 disciplinary report, in 2000, for taking off his shirt along with a large group of other inmates to protest a new policy. [Answer, Exhibit 3, p. 59; Petition, Exhibit F, p. 40.] Petitioner also had four minor infractions, in 1987, 1990, and 1998, for things such as failing to stand for count, talking after lights out, talking to another inmate during count, and failing to report for job assignment. Again, there is no nexus apparent in the record between Petitioner's minor disciplinary record and his current suitability for parole. [Petition, Exhibit F, p. 40.]

in Tulare County, the country of last legal residence, and working for a flooring business.

[Answer, Exhibit 1, p. 2.]

In the end, the Governor relied solely upon the gravity of the commitment offense to deny parole, finding that the gravity of the murder alone outweighed all of the positive factors cited by the Board.[4] The Governor noted that despite Petitioner's claim he killed the victim in self defense, there was evidence in the record that Petitioner premeditated on some level:

> The police report states that Mr. Martorana's sister-in-law told officers that Mr. Martorana complained the evening before the murder that Mr. LoGrasso had been ripping him off and said several times "I'm going to kill him. I'm going to kill him."  Mr. LoGrasso's sister told police that Mr. Martorana's sister-in-law told her before the murder that Mr. Martorana believed he was dying and that he had three people to kill before that happened. Moreover, Mr. LoGrasso's son told police that while playing with Mr. Martorana's son the evening before the murder, he said "[M]y dad is going to shoot your dad."

[Answer, Exhibit 1, p. 2.]  The Governor did not explain how these facts regarding the underlying commitment offense demonstrated that Petitioner would pose a current danger to society, especially considering Petitioner's efforts to obtain an education and vocational training as well as Petitioner's participation in self-help and substance abuse programs.  The Governor also did not suggest any further rehabilitation efforts Petitioner could undertake while in prison, or what, if anything, Petitioner could do in order to demonstrate he was suitable for parole.[5]

As the California Supreme Court has recognized,

> Absent some affirmative evidence of a change in the prisoner's demeanor and mental state, the circumstances of the commitment offense may continue to be probative of the prisoner's dangerousness for some time in the future. At some point, however, when there is affirmative evidence, based upon the prisoner's subsequent behavior and current mental state, that the prisoner, if released, would not currently be dangerous, his or her past offense may no longer realistically constitute a reliable or accurate indicator of the prisoner's current dangerousness.

Lawrence, 44 Cal. 4th at 1219.  The Governor in this case has not shown that the nature and

---

[4] The Governor also noted that the Tulare County District Attorney's Office opposed release, based upon the gravity of the offense and Petitioner's history of substance abuse. However, as explained herein, the reasons cited by the prosecutor are not probative of Petitioner's current dangerousness.

[5] In his 2005 decision denying parole, the Governor suggested Petitioner could benefit from additional, consistent, participation in substance abuse programs.  Petitioner took the advice, and as the Governor notes in his 2006 decision, Petitioner participated consistently in substance abuse programs.

circumstances of the commitment offense bears any nexus to Petitioner's current dangerousness.

> [T]he Legislature specifically contemplated both that the Board "shall normally" grant a parole date, and that the passage of time and the related changes in a prisoner's mental attitude and demeanor are probative to the determination of current dangerousness. When, as here, all of the information in a postconviction record supports the determination that the inmate is rehabilitated and no longer poses a danger to public safety, and the Governor has neither disputed the petitioner's rehabilitative gains nor, importantly, related the commitment offense to current circumstances or suggested that any further rehabilitation might change the ultimate decision that petitioner remains a danger, mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability.

Id. at 1226-27.

The Governor acknowledges the positive changes Petitioner has made in the almost 30 years since he committed the murder for which he is incarcerated. The record in this case is replete with evidence establishing Petitioner's rehabilitation, remorse, and low risk of danger to society upon release. There is nothing in the record, aside from the unchangeable circumstances of his commitment offense, which demonstrates Petitioner poses a current threat to public safety. Under California law, the Governor cannot rely solely upon the facts of the commitment offense to continue to deny parole to Petitioner where there is no nexus between those underlying facts and Petitioner's current dangerousness. Lawrence, 44 Cal. 4th at 1219.

Because there is no evidence that Petitioner poses a current danger to society, the state court's conclusion that there was "some evidence" supporting the Governor's decision was an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). The Court GRANTS the Petition.

### *Conclusion*

For the reasons set forth herein, the Court GRANTS the petition. At the time of the Board's hearing on March 28, 2006, the Board determined Petitioner had completed the 124 month total term of confinement, and was immediately eligible for release. Therefore, there is no need to remand the case to the Board to calculate the parole date. The Court orders Respondent to release

///

///

Petitioner within (30) days of the entry of judgment, on such terms and conditions of parole as the Board determines appropriate according to the law which governs such matters.

**IT IS SO ORDERED**.

**DATED:  June 17, 2010**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**
**Southern District of California**